Case 1:19-cr-00479-SAG   Document 22   Filed 05/15/20   Page 1 of 7

X___ FILED    ___ ENTERED
___ LOGGED    ___ RECEIVED

5:14 pm, May 15 2020
AT BALTIMORE
CLERK, U.S. DISTRICRT COURT
DISTRICT OF MARYLAND
BY ____CRP_____Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**UNITED STATES OF AMERICA**       \*

**v.**       \*

       Case No.: SAG-19-479

**DEVIN GALLAGHER,**       \*

   **Defendant.**       \*

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION AND ORDER

Pending before me is the defendant Devin Gallagher's Motion to Reopen and Review Detention Status, ECF No. 15, which he filed on May 6, 2020. The government filed an opposition to the pending motion yesterday, ECF No. 19. Gallagher initially filed a motion for a detention hearing on March 23, 2020, ECF No. 11, to which the government filed an opposition on April 9, 2020, ECF No. 12. On April 13, 2020, I presided over a detention hearing. After considering the pre-hearing filings, the Pretrial Services Report and an April 10, 2020 Addendum, the proffers and arguments from counsel, the state of affairs at the Chesapeake Detention Facility (CDF), and the defendant's proposed release plan, I issued an Order of Detention, ECF No. 14. In my Order, I stated that if someone tested positive for COVID-19 at CDF, I would consider that a material change in circumstances and would consider reopening the detention hearing and entertain proposed conditions of release. I noted in my Order that the proposed third-party custodian, Gallagher's girlfriend, coupled with the unavailability of traditional electronic home monitoring, were insufficient to assure me of the safety of the community if he were released.

In his motion, Gallagher argues that "there are now two correctional officers and one inmate diagnosed with covid-19" at CDF. Def.'s Mot. ¶ 8. The government contends that "Gallagher relies on the prospect of a mass COVID-19 outbreak at the Correction Detention

Facility ("CDF") in Baltimore, where the defendant is currently housed." Gov't Opp'n 1–2. It insists that "[t]here is no indication of any spread of COVID-19 at CDF, and, even if there were, Gallagher's motion must be denied." *Id.* at 3. According to the government's filing, five CDF staff members and an inmate have tested positive for COVID-19 since the detention hearing. *See id.* at 3 n.2. The government reports that the three most recent staff cases include a CDF dentist who tested positive on May 14, 2020 and had last been at the jail on May 4, 2020; a correctional officer who tested positive on May 5, 2020 and had last been at the jail on April 24, 2020; and a contract nurse who tested positive on May 2, 2020 and had last been at the jail on April 26, 2020. *Id.* At today's hearing, the government advised me that there has been contact tracing with respect to the positive staff members to determine which detainees they came into contact with, but the government did not know what the facility actually did when it identified who had contact with a positive staff member. With respect to the one COVID-19 positive detainee, the government reports that he arrived at CDF on May 8, 2020, underwent a medical examination, and was placed into the intake quarantine unit. *Id.* He remained there until May 11, 2020, at which point he developed a cough and fever, and was transferred to an isolation unit. *Id.* On May 13, 2020, testing confirmed that the detainee had COVID-19, and he will now remain in the isolation unit until he is medically cleared. *Id.* The government argues that there "is no reason to believe, as of this writing, that there has been any COVID-19 exposure beyond that intake quarantine area, and any staff or detainees who came into contact with the positive detainee were wearing appropriate protective equipment." *Id.* I have no information about whether the jail conducted a contact tracing inquiry relative to the detainee, what the results were, and what, if anything, has been done to quarantine anyone who came into contact with him before his isolation began.

Gallagher argues that "it is likely that the number of positive cases [at CDF] will increase with additional testing." Def.'s Mot. ¶ 9. I have no evidence before me that shows whether, when, and under what circumstances detainees or staff are being tested. The government attached 19 documents to its opposition, showing policies and procedures at CDF and demonstrating that new detainees are being screened and prisoners age 50 and over are being closely observed and having their temperatures checked three times each day. *See* Gov't Opp'n 15–17 & Ex. 19 (Apr. 30, 2020 Ltr. from U.S. Marshal Hughes). They also showed that the facility's medical provider has received test kits. *Id.* at 16; *see also* Ex. 19 ("Corizon Health has COVID-19 test kits"). But no one has provided me with any evidence, policies, or procedures regarding the testing of jail staff or detainees. According to the Pretrial Services Report, Gallagher reported no underlying medical conditions that might increase his risk of serious harm from the disease. His attorney said during today's hearing he has high blood pressure and high cholesterol, but he provided me with no medical records to support this claim. In any event, public health officials, elected officials, and judges have identified the myriad reasons why reducing the pretrial detention population is ultimately safer for detainees, correctional staff, and the greater community during this pandemic, provided, of course, that doing so is consistent with ensuring public safety. In my view, it would be counterproductive to wait until there is an outbreak of COVID-19 at CDF before considering the disease as a factor weighing in favor of pretrial release. We have been advised by public health officials and elected officials that prevention, not treatment, is the best way to curb and manage the transmission of the disease.

Although there is no evidence of an outbreak of the disease inside CDF, it is undisputed that since the detention hearing, five CDF staff members and a detainee who recently arrived at

the facility have tested positive.  For that reason, I will reopen the hearing and entertain proposed conditions of release.

In his motion, Gallagher repeated his prior request that I release him to the third-party custody of Brittany Gallagher, who is now his wife, and he suggests an additional condition that he must participate in a state-certified private home detention program while living with her.  Def.'s Mot. ¶¶ 11–12 (attaching letters from Advantage Sentencing Alternative Programs, Inc. and Gaudenzia, Inc.).  In the alternative, he offers his mother, 54, and grandmother, 75, as third-party custodians.  *Id.* ¶ 13.  They had not been vetted by Pretrial Services at the detention hearing, but they have now been approved as third-party custodians.  They have lived together in Selbyville, Delaware for nine years.  Gallagher's step-grandfather also lives in the home.

At the initial detention hearing, I considered the factors in the Bail Reform Act, and I listed my findings in the Order of Detention.  According to the government's proffer and the indictment, Gallagher sold large amounts of marijuana in Anne Arundel County last year and he possessed a firearm in furtherance of drug-trafficking.  The alleged violation of 18 U.S.C. § 924(c) triggers a rebuttable presumption of detention.  After visual surveillance of Gallagher and K-9 hits for narcotics outside his vehicles and home, agents executed search warrants for his Chevrolet Impala, a white van associated with him, and his home.  In the white van, police found approximately two kilograms of marijuana; approximately 6,000 grams of THC cartridges; and in a backpack, they found an unloaded .40 caliber Smith & Wesson handgun, a .40 caliber magazine containing eight rounds, and documents in Gallagher's name.  In the Chevrolet Impala, police found $4,300 in U.S. currency; 172 grams of THC cartridges; and documents in his name.  Police also searched his home and found approximately $41,000 in U.S. currency; a small amount of marijuana; drug packaging paraphernalia; and paperwork in his name.

Gallagher, 28, was born and raised in Maryland. He has strong family ties to Maryland and Delaware. He has a documented history of substance abuse and mental health issues dating back to his childhood. He has been diagnosed with Attention Deficit Hyperactivity Disorder and Bipolar Disorder by psychiatrists at Sheppard Pratt Inpatient Hospital in Baltimore and Spring Grove Inpatient Hospital in Rockville.

Gallagher has three prior convictions for possession with intent to distribute controlled dangerous substances and two prior convictions for theft. He has no prior convictions for crimes of violence. He has performed poorly on court supervision in the past, having violated his probation several times. According to the Pretrial Services Report, he has been released on bond or personal recognizance twelve times and has never failed to appear for court. He is currently on probation in two related drug cases in Talbot and Baltimore Counties. State judges in both counties released him pending resolution of this case.

In June 2019, Gallagher was released on related state charges subject to electronic home monitoring. He was living with his girlfriend who is now his wife. He complied with the release conditions while the charges were pending. However, according to a letter to Anne Arundel County Circuit Judge Stacy W. McCormack from an Anne Arundel County Correctional Program Specialist, Gallagher removed his ankle bracelet on October 10, 2019, after he was told to report to the Ordnance Road Correctional Facility because a warrant for these federal charges had been issued. He did not report to the jail as directed. Instead, he took a bus to California. While he was away, he was in regular contact with his attorney and also was in contact with an Anne Arundel County detective, both of whom told him he must return to Maryland and turn himself in. He did not immediately return from California. Three weeks after he left Maryland on a bus, Gallagher returned home on a bus to surrender himself. Upon his return, he spoke with the detective and told

him where he was.  The detective picked him up the next day from his home and took him to the federal courthouse, where he consented to detention.  His attorney and family claim he was scared to face the federal charges and that he finally came around and turned himself in, knowing the charges he was facing.

Having considered the information presented to me at the detention hearings, the parties' submissions, the current state of affairs at CDF, the public reports on how COVID-19 has affected other jails and prisons, and the Pretrial Services Report and three addenda, I find that there is a combination of conditions that will reasonably assure me of the safety of the community and Gallagher's appearance as required.  Gallagher will be released to the third-party custody of his grandmother and his mother.  His mother owns a jewelry business that she operates from home. His grandmother is retired, takes care of her husband who had a stroke, and stays home all day.  I required his mother and grandmother to listen to today's detention hearing, and I spent approximately thirty minutes asking them questions, focusing in particular on how I could be sure Gallagher would not violate his release conditions or remove his ankle bracelet again.  His grandmother assured me that she is home all day except for trips to the grocery store, that she will watch over him, and that she will report him if he flees or violates the release conditions.  His mother advised that she too is home all day and will watch over him.  They told me that at least one of them will be home with him at all times.  It is quite unusual to have two third-party custodians approved by Pretrial Services who live in the same home, are in positions of authority relative to the defendant, and who are home all day.  They also advised me that the home has an alarm system that will alert if anyone opens the door while it is on and that they turn it on at night. They further advised me that his mother would drive him to court appearances and to prison to self-surrender for any sentence he may serve.  With respect to complying with public health

requirements, the residence is suitable.  Gallagher will have his own bedroom and bathroom upstairs where he can self-quarantine.  His mother and grandmother said no one comes into the home, that they practice social distancing, and that they wear a mask when they go to the store.  I am further assured by the fact that they live in Selbyville, Delaware.  This small town with a population of 2,200 in Sussex County, Delaware is a two-hour drive from Anne Arundel County, Maryland where Gallagher allegedly committed these crimes.  I also note that none of his prior charges, including drug-trafficking charges, occurred in Sussex County.

While living with his mother and grandmother, he will be subject to home incarceration, which will be monitored by a location monitoring technology selected by Pretrial Services.  Pretrial Services has confirmed that its counterparts in Delaware will provide courtesy supervision and will monitor him with traditional electronic home monitoring.  The District of Delaware Pretrial Services Office will not install the ankle bracelet on Gallagher until he has been quarantined at home for 14 days after his release.  During those 14 days, the District of Maryland will monitor his home incarceration through the Smartlink application on a smartphone.  All other conditions of release are contained in the Order Setting Conditions of Release, ECF No. 21.

| | |
|---|---|
| May 15, 2020 | /S/ |
| Date | Deborah L. Boardman |
| | United States Magistrate Judge |