IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal No. SAG-19-0479 |
| | * | |
| DEVIN GALLAGHER | | |

*******

**<u>MEMORANDUM OPINION</u>**

On October 9, 2019, a grand jury returned an indictment against Devin Gallagher for violations of 18 U.S.C. § 922(g)(1) (possession of a firearm and ammunition by a convicted felon), 21 U.S.C. § 841(a) (possession with intent to distribute marijuana and THC); and 18 U.S.C. § 924(c) (possession of a firearm and ammunition in furtherance of a drug trafficking crime). ECF 1. Currently pending is the Government's appeal, ECF 20, ECF 27, of an order of release entered on May 15, 2020 by United States Magistrate Judge Deborah L. Boardman, ECF 21. Because the parties provided adequate supporting information and records in their filings, this Court did not need to seek supplemental briefing, although the Court obtained and docketed Gallagher's medical records from CDF. In addition to those medical records, this Court has reviewed the parties' briefing, and the audio recordings of the April 13, 2020 and May 15, 2020 detention hearings before Judge Boardman. ECF 29, 30. No further hearing is necessary to resolve this Motion. *See* Loc. R. 105.6 (D. Md. 2018); *see also United States v. Martin,* Crim. No. PWG-19-140, 2020 WL 1274857, at *3 (D. Md. Mar. 17, 2020) (finding "ample authority for the conclusion that the Court may decide the [appeal of detention] on the filings . . . as opposed to a hearing."). For the reasons that follow, the Government's appeal will be granted, and an order of detention will issue.

I.    **Procedural History**

At Gallagher's initial appearance in court on October 31, 2019, the government sought his pretrial detention. Gallagher consented to detention, with the understanding that he could seek a detention hearing at a later date. ECF 7. On March 23, 2020, Gallagher filed a motion requesting that his detention hearing be scheduled. ECF 11. Judge Boardman held a detention hearing on April 13, 2020. ECF 13. After the hearing, Judge Boardman entered a written order of detention, finding that Gallagher had not proposed release conditions sufficient to overcome the presumption that he posed a danger to the community. ECF 14. Judge Boardman's opinion contained the following detailed rationale, supporting her detention decision:

> According to the government's proffer and the indictment, Mr. Gallagher sold large amounts of marijuana in Anne Arundel County last year and he possessed a firearm in furtherance of drug-trafficking. The alleged violation of 18 U.S.C. § 924(c) triggers a rebuttable presumption of detention. After visual surveillance of Mr. Gallagher and K-9 hits for narcotics outside his vehicles and home, agents executed search warrants for his Chevrolet Impala, a white van associated with him, and his home. In the white van, police found approximately two kilograms of marijuana; approximately 6,000 grams of THC cartridges; and in a backpack, they found an unloaded .40 caliber Smith & Wesson handgun, a .40 caliber magazine containing eight rounds, and documents in Mr. Gallagher's name. In the Chevrolet Impala, police found $4,300 in U.S. currency; 172 grams of THC cartridges; and documents in his name. Police also searched his home and found approximately $41,000 in U.S. currency; a small amount of marijuana, drug packaging paraphernalia; and paperwork in his name. Mr. Gallagher has a significant history of documented substance abuse and documented mental health issues dating back to his childhood. He has three prior convictions for possession with intent to distribute, and he has not performed well on court supervision. None of his prior convictions are for crimes of violence. He is currently on probation in two related drug cases in Talbot and Baltimore Counties; state judges in both counties released him pending resolution of this case. He was released on related state charges subject to electronic home monitoring in June 2019 and complied with the release conditions until the federal indictment in October 2019. He went to California for three weeks after the state charges were dismissed and eventually returned to turn himself in on these federal charges. The currently available release options are insufficient to reasonably assure the Court of the safety of the community. Mr. Gallagher proposes he live with his girlfriend with whom he lived while on electronic home monitoring on the related state charges. She might have been a suitable custodial option if the Court could require traditional electronic home monitoring with an

2

> ankle bracelet, but that option is not available at this time because a pretrial services officer cannot social distance during installation of the bracelet. A 28-day inpatient drug treatment program is also not an available option during this public health emergency as the program is not accepting patients. If there is a Covid-19 positive at Chesapeake Detention Facility, the Court will consider that a material change in circumstances and will consider reopening the hearing and entertain proposed conditions of release.

ECF 14. On May 6, 2020, Gallagher filed a second motion for review of order of detention, citing positive COVID-19 tests for two correctional officers and one inmate at the Chesapeake Detention Facility ("CDF"), and offering some additional release conditions for consideration, including new proposed third-party custodians. ECF 15. Judge Boardman conducted a second detention hearing on May 15, 2020, and issued an order of release at the conclusion of the hearing. ECF 21.

In the accompanying memorandum opinion, Judge Boardman included some clarifying information about Gallagher's conduct under state supervision and electronic home monitoring:

> In June 2019, Gallagher was released on related state charges subject to electronic home monitoring. He was living with his girlfriend who is now his wife. He complied with the release conditions while the charges were pending. However, according to a letter to Anne Arundel County Circuit Judge Stacy W. McCormack from an Anne Arundel County Correctional Program Specialist, Gallagher removed his ankle bracelet on October 19, 2019, after he was told to report to the Ordnance Road Correctional Facility because a warrant for these federal charges had been issued. He did not report to the jail as directed. Instead, he took a bus to California. While he was away, he was in regular contact with his attorney and also was in contact with an Anne Arundel County detective, both of whom told him he must return to Maryland and turn himself in. He did not immediately return from California. Three weeks after he left Maryland on a bus, Gallagher returned home on a bus to surrender himself.

ECF 22 at 5. Even so, Judge Boardman ordered Gallagher's release, to reside with his mother and grandmother in Selbyville, Delaware, and to be monitored "by a location monitoring technology selected by Pretrial Services." *Id.* at 7. The Government promptly filed the instant appeal and supporting memorandum of law. ECF 27.

**II.     Standard of Review**

Pretrial detention and release are governed by the Bail Reform Act ("BRA"), 18 U.S.C. §§ 3141, *et seq.* The government is permitted to seek pretrial detention of a defendant charged with offenses involving the possession of a firearm. *Id.* § 3142(f)(1)(E). In fact, a rebuttable presumption of detention applies to one of the charges lodged against Gallagher: Count Two, an "offense under section 924(c)." *Id.* § 3142 (e)(3)(A) & (B). Where the presumption can be rebutted, the BRA instructs the Court to seek "the least restrictive further condition or conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id. §* 3142(c)(1)(B). However, if the Court finds after the hearing that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," the court "shall order the detention of the person before trial." *Id.* § 3142(e)(1). Where, as here, a detention ruling is based on a defendant's danger to the community, the Court must make the finding by clear and convincing evidence. *United States v. Stewart*, 19 F. App'x 46, 48 (4th Cir. 2001) (per curiam).

The Court's determination is governed by four factors:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1951, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive or destructive device;

(2) The weight of the evidence against the person

(3) The history and characteristics of the person, including –

(A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

> (B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The BRA permits the government to file a motion for revocation of a magistrate judge's release order, and states that the motion "shall be determined promptly." *Id.* § 3145(a). The district judge must review the detention issue *de novo* "and must make an independent determination of the proper pretrial detention or conditions of release." *Stewart,* 19 F. App'x. at 48.

### III. Analysis

Gallagher asks this Court to review Judge Boardman's release order, which considered his case under the pretrial detention framework in 18 U.S.C. § 3142(f), including application of the four factors set forth in 18 U.S.C. § 3142(g). Gallagher has not expressly requested temporary release under 18 U.S.C. § 3142(i). However, for the reasons addressed below, this Court will consider the appropriateness of Gallagher's detention or release under both § 3142(f) and (i).

Because Judge Boardman cited the positive COVID-19 tests at CDF as the "changed circumstances" warranting a second detention hearing, it is important to review the overall framework of the detention issues presented to the Court, and the impact of COVID-19 and the conditions within CDF on each issue. As described above, Congress carefully prescribed the factors that a court should consider in weighing whether a particular defendant should be detained or released before trial. *See generally* 18 U.S.C. § 3142(g). None of those factors refers specifically to the health of the defendant, or to whether the conditions of incarceration threaten the defendant's well-being. Instead, Congress focused the required inquiry on the defendant's risk

of nonappearance, and the danger that the defendant's release would pose to other individuals. In some circumstances, clearly, a particular defendant's medical condition could reduce that defendant's risk of flight or danger to the community, and the health condition would therefore fall within the factors appropriately considered in the context of § 3142(g). Absent those circumstances, however, a particular defendant's health conditions, and the possible risks posed to the defendant by incarceration, do not affect the § 3142(f) and (g) analysis. *See, e.g., United States v. Clark,* 2020 WL 1446895, at *3 (D. Kan. Mar. 25, 2020) ("A defendant's concerns that he or she would face heightened COVID-19 risks if incarcerated would not typically factor into a § 3142(f) analysis, which focuses on whether the court can fashion conditions of release that will reasonably assure the defendant is not a risk of nonappearance or a risk of harm to any others or the community. The risk of harm *to the defendant* does not usually bear on this analysis."); *United States v. Lawton,* Crim. No. CR419-102, 2020 WL 1984897, at *1 (S.D. Ga. April 27, 2020) (same); *United States v. Whyte,* Crim. No. 3:19-cr-64-1 (VLB), 2020 WL 1911187, at *4 (D. Conn. April 8, 2020) (analyzing medical conditions under § 3142(i)); *United States v. Aguirre-Maldonado,* Crim. No. 20-cr-53 (NEB/TNL), 2020 WL 1809180, at *1 (D. Minn. April 9, 2020) ("While the Court appreciates the unprecedented nature of the COVID-19 pandemic, Defendant has offered no reason why the pandemic would reduce his risk of nonappearance or the risk that he poses to the community."); *United States v. Lee,* No. 19-cr-298 (KBJ), 2020 WL 1541049 (D.D.C. March 30, 2020) ("[T]he relevant statutory inquiry [under § 3142(g)] is *not* the benefits that a defendant's release would bring about (however significant) or the harms that his incarceration would cause (however substantial). Rather, the statute requires the Court to evaluate "*the danger"* that "would be posed *by the person's release*.") (emphasis in original). Gallagher does not have COVID-19, nor does he allege that he has been exposed to any individuals who have

contracted it. Thus, this Court rejects the notion that the positive COVID-19 tests of staff members or another inmates at CDF could affect an analysis of the relevant factors under § 3142(f) and (g), as they pertain to Gallagher. *See, e.g. United States v. Sumbry,* No. 2:20-CR-35-PPS-JPK, 2020 WL 2092838 (N.D. Ind. May 1, 2020) ("Sumbry's evidence regarding COVID-19 cases at Porter County Jail is less relevant to the determination required under § 3142(f)").

However, as will be discussed below, the COVID-19 pandemic is relevant in the assessment of whether a defendant's temporary release might be appropriate under § 3142(i), and will be considered fully in that context, in accordance with the Fourth Circuit's order in *United States v. Gary Creek,* Criminal No. CCB-19-036, ECF 402 (April 15, 2020) (directing the District Court to consider "in the first instance the severity of the risk that the COVID-19 virus poses to the defendant, given his existing medical conditions and the current COVID-19 situation at the facility where he is being held, and whether that risk, balanced against the other Bail Reform Act factors, rises to the level of a 'compelling reason' for temporary release under 18 U.S.C. § 3142(i).").

### A.  Detention or Release Pursuant to §§ 3142(f) and (g)

First, this Court turns to a *de novo* review of the determinations made by Judge Boardman, using the factors set forth in § 3142(g). Taking into account the nature of the charges against Gallagher, the weight of the evidence, and Gallagher's history and characteristics, this Court is persuaded that Gallagher has failed to rebut the statutory presumption that his pretrial detention is appropriate. Specifically, this Court finds by clear and convincing evidence that no condition or combination of conditions of release would reasonably assure the safety of the community if Gallagher were released pending trial. Additionally, this Court finds that Gallagher's willingness

to cut off an ankle bracelet and flee the jurisdiction just seven months ago establishes, by a preponderance of the evidence, that he also constitutes a serious risk of flight.[1]

The required analysis begins with the nature and circumstances of the charged offenses, which are summarized in some detail in Judge Boardman's original detention order, as quoted above. In summary, following information from a confidential informant indicating that Gallagher was selling large quantities of marijuana in Annapolis, Maryland, detectives confirmed that information using both surveillance and K-9 scans of Gallagher's vehicles. The detectives then obtained and executed search warrants at Gallagher's residence and in his two vehicles, collectively resulting in the recovery of distribution quantities of marijuana and THC, drug packaging paraphernalia, more than $44,000 in United States currency, an unloaded .40 caliber Smith & Wesson handgun, and a .40 caliber magazine containing eight rounds. Detectives also recovered documents, in each of the three locations, in Gallagher's name. The firearm was recovered from a backpack in a white van, which had been associated with Gallagher — as revealed by extensive surveillance. Detectives observed Gallagher, and only Gallagher, occupying that van on several occasions. In addition, the registration tag on that van had been used on other vehicles driven by Gallagher, on multiple occasions. Finally, the backpack containing the firearm and magazine also contained paperwork bearing Gallagher's name. The weight of the evidence against Gallagher, then, is extremely strong, despite the fact that he might mount a defense on the merits as the case proceeds. *See* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). Moreover, possession of firearms inherently presents a significant danger to the community, particularly in the hands of persons with

---

[1] While the Court finds that Gallagher presents a serious risk of flight, it would have ordered detention even if considering only the danger he presented to the community.

prior felony convictions. The fact that Gallagher's possession of the firearm and magazine occurred in connection with apparent narcotics distribution only enhances the danger that his conduct presents.

Turning to Gallagher's history and characteristics, his criminal history further illustrates the serious risk he poses to community safety. At just twenty-eight years of age, Gallagher has sustained seven adult criminal convictions, including three felony convictions for possession with intent to distribute narcotics. Those three convictions for serious drug offenses qualify Gallagher as an Armed Career Criminal under 18 U.S.C. § 924(e), and mandate a 15-year mandatory minimum sentence if convicted for unlawful possession of a firearm. In addition, because Gallagher has at least two prior convictions for controlled substances offenses, he is also a Career Offender under United States Sentencing Guideline 4B1.1(a), and would be subject to a higher advisory guidelines range. Gallagher's extensive criminal history, in a relatively short period of time, raises the legitimate concern that he could reoffend while in the care of his proposed third-party custodians. *See United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) (considering likelihood of continued narcotics trafficking as part of danger to the community analysis).

Perhaps most important to this Court, Gallagher's performance on community supervision after his multiple adult convictions has been abysmal. As documented in his Pretrial Services Report, he has violated the terms and conditions of every period of court supervision imposed upon him. Currently, he has violation of supervision matters pending against him in the Circuit Court for Baltimore County and the Circuit Court for Talbot County, because he committed the instant offenses, according to the government, while under the supervision of those two Courts.

The incident in which Gallagher cut off his ankle bracelet and fled the jurisdiction, while under supervision of the state court, is also of serious concern when considering whether similar

conditions of release would be appropriate here.  Gallagher contends that he removed his ankle bracelet because he believed he no longer needed to be monitored by the state court, once his state charges were nolle prossed in favor of federal charges.  *See* ECF 29 at 9–10. However, his version of events is implausible, in light of the context, including the ensuing events.  Gallagher was well aware of the impropriety of removing his ankle bracelet — without authorization — under *any* circumstances. But in his case in particular, he knew of the pending federal charges, and, once he cut off the ankle bracelet and departed for California, he received repeated requests to return to Maryland to be taken into custody.  The fact that he apparently maintained contact with his attorney, and even with law enforcement, during his three-week period as a fugitive does not assure this Court that he would be incentivized to appear in court as required in this case, where he faces a significant term of incarceration.  Instead, nothing would prevent Gallagher from making a similar decision to flee if he were to be installed on a similar ankle monitor today.  Indeed, Judge Boardman summarized appropriately in her original detention order, stating Gallagher "has not performed well on court supervision." ECF 14. Gallagher's track record of performance under conditions of supervision, then, including his recent experience on electronic home monitoring, does not allow this Court any degree of comfort that he will comply successfully with release conditions, even under the more positive influences of his mother and grandmother.

Also relevant to Gallagher's history and characteristics, he reported to pretrial services that he has no underlying medical conditions.[2]  Although this Court is mindful of the deleterious effect that any COVID-19 infection might have, Gallagher has not presented any medical records to

---

[2] At the first detention hearing, Gallagher did not claim to have any medical condition that placed him at a higher risk of developing serious COVID-19 symptoms. At the second detention hearing, he stated that he has high blood pressure and high cholesterol. To date, however, neither Gallagher nor his counsel has provided any medical records to substantiate this representation.

demonstrate that he suffers from underlying medical conditions that might place him at an enhanced risk of developing serious COVID-19 complications, and the medical records from the facility do not reflect any diagnoses. *See generally* ECF 32. Thus, nothing about the COVID-19 pandemic reduces the danger Gallagher presents to the community, or mitigates his likelihood of nonappearance in court.

Ultimately, this Court finds by a preponderance of the evidence that there is a serious risk that the defendant will not appear in court, and by clear and convincing evidence that the defendant poses a risk to the safety of other persons and the community. The nature of the charges against Gallagher, the weight of the evidence, and his history and characteristics all weigh in favor of his pretrial detention, and do not serve to rebut the statutory presumption that he should be detained.

### B. Request for Temporary Release Pursuant to Section 3142(i)

Section 3142(i) permits "the temporary release of the person, in the custody of a United States marshal or other appropriate person, to the extent that the judicial officer determines such release to be necessary for the preparation of the person's defense or for another compelling reason." Gallagher's case, like all criminal cases, has been postponed by this Court's most recent Standing Order canceling all non-emergency court proceedings through June 5, 2020, and the delay occasioned by the pandemic has been excluded under the Speedy Trial Act. *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19,* Case 1:00-mc-00308, Standing Order 2020-07 (D. Md. April 10, 2020). Thus, at least at this time, temporary release is not justified on the basis of Gallagher's need to prepare his defense. Although in-person consultation is quite limited in detention facilities, in-person consultation between attorneys and clients is similarly ill-advised in present circumstances, even when the client is not incarcerated.

When the Court is able to return to standard operations, Gallagher and his attorney will be afforded whatever time is necessary to confer and to prepare an adequate defense.

This Court must also assess whether there is "another compelling reason" justifying Gallagher's temporary release under § 3142(i). Prior to the instant pandemic, this provision was "sparingly" used to justify temporary release for specific medical treatments, such as cancer surgery or chemotherapy. *See, e.g., United States v. Hamilton*, Crim. No. 19-CR-54-01 (NGG), 2020 WL 1323036, at *3 (E.D.N.Y. March 23, 2020). Courts' use of section 3142(i) has been far more widespread in the context of COVID-19. The well-reasoned opinion in *Clark*, 2020 WL 1446895, at *3, sets forth four factors to be considered: (1) the original grounds for detention; (2) the specificity of a defendant's COVID-19 concerns; (3) the extent to which the proposed release plan is designed to mitigate or exacerbate other COVID-19 risks to the defendant; and (4) the likelihood that a defendant's release would increase the COVID-19 risks to others. *Id.*[3] The Defendant bears the burden of establishing those factors. *See United States v. Sanders*, Crim. No. 19-20037-01-DDC, 2020 WL 1528621, at *3 (D. Kan. March 31, 2020). "The question for the Court is whether the COVID-19 health risks to the Defendant, should he remain detained, outweigh those traditional Section 3142(g) factors *and* the COVID-19 health risk to the community that Defendant's release could occasion." *United States v. Hernandez,* Crim. No. PX-19-158-9, slip op. at 5-6 (D. Md. Apr. 29, 2020).

As described above, the original grounds for detention weigh strongly in the government's favor, due to the extreme risk Gallagher poses to community safety as a result of the nature of the

---

[3] While *Clark* is not binding precedent, its persuasive and logical framework has been adopted by numerous courts around the country, including in this District.  See, e.g. *United States v. Green*, No. 19-cr-00539-CCB, 2020 WL 1873967 (D. Md. April 15, 2020).

instant offense, the weight of the evidence against him, and his significant and recent criminal history and poor performance on supervision, along with the risk of flight evidenced by his recent unauthorized removal of an ankle bracelet and flight from this jurisdiction to the other side of the country.

Turning to the second factor, Gallagher cites no specific COVID-19 concerns, outside of general concerns regarding the difficulties of social distancing in an incarcerative setting. Gallagher is young and healthy, and is therefore at no greater known risk of an adverse outcome should he contract the virus. This Court is not indifferent to the enhanced risk of viral transmission in detention facilities. It appears, however, that CDF has taken a comprehensive set of precautionary measures to protect its staff and its residents. For instance, CDF continues to direct detainees to adhere to social distance and hygienic guidelines, as articulated by medical experts and in local guidance. *See, e.g.*, ECF 27-11 (CDF bulletin requiring "[f]requent hand washing, [m]aintaining social distance of at least six feet, [and] [c]ontinuous wiping down of all areas within housing units"). CDF has implemented procedures encompassing all who attempt to enter the facility, including mandatory temperature checks at the entrance of the building. ECF 27-13.

From the record presently before this Court, it appears that these measures have been effective. To date, CDF has had six known positive COVID-19 tests. Only one involved an inmate, who contracted the virus prior to arriving at CDF. Two tests involved officers, and the other three tests involved non-officer staff. In addition to the protocols that appear to have controlled any significant outbreak so far, on May 20, 2020, the Governor of Maryland, Larry Hogan, announced universal COVID-19 testing at all state-run correctional and juvenile facilities,

including CDF.[4]  Such measures will only contribute to CDF's ability to keep its detainees protected from serious viral complications.  CDF's contact tracing protocol, as described by the Government in ECF 30, appears to have worked to keep its detainees largely free of significant viral symptoms.  Ultimately, then, as to the second *Clark* factor, the Court finds that Gallagher harbors no specific COVID-19 concerns, other than those common to all detainees in all detention facilities.

The final two *Clark* factors involve the nature of the proposed release plan, including the extent to which it is designed to mitigate Gallagher's exposure to the COVID-19 virus, and the risk that Gallagher's release would pose to the community.  Gallagher advocates his release to "electronic monitoring."  ECF 29 at 1.  It appears, from the information Pretrial Services has provided, that the Pretrial Services Office in Delaware is continuing to offer traditional electronic home monitoring by ankle bracelet, despite the risks posed by the inability of the installing officer and the defendant to maintain social distancing during the installation.  To mitigate those risks, the Delaware Pretrial Services Office requires fourteen days of quarantine before that installation could occur, which would leave Gallagher temporarily subject to other available monitoring alternatives, such as SmartLink, VoiceID, and Home Incarceration by Phone.  Those options only offer periodic "spot-checks" as to the defendant's location, and cannot provide immediate notification to pre-trial services if the defendant leaves his prescribed residence.  Moreover, as described above, even a properly installed ankle monitor cannot effectively guarantee the whereabouts of any defendant willing to remove the device without authorization.

---

[4] Pamela Wood & Phillip Jackson, "Maryland to test all detainees, staff at prisons and juvenile facilities for coronavirus," *Baltimore Sun* (May 20, 2020), https://www.baltimoresun.com/coronavirus/bs-md-prison-testing-20200520-wroxapcoljbrvmv7lcsh4vrn2e-story.html.

Given the Court's inability to effectively monitor Gallagher, the degree to which release would protect him from virus exposure "depend[s] on large part on how compliant Defendant would be with the directives of public officials and health experts should he be released." *Green*, 2020 WL 1873967, at *3. Gallagher's extensive prior history of failure to comply with release conditions, during every term of court supervision, does not suggest that his compliance would be assured.

Even if release were otherwise warranted, Gallagher's proposed temporary release plan would place him in a residence with medically vulnerable individuals. He proposes to reside with his mother (age 54), who describes herself as "disabled," and his grandmother (age 75), in Selbyville, Delaware. Gallagher's 76-year-old step-grandfather also lives in the home, and has not only suffered a stroke, but requires the care of Gallagher's grandmother. Persons over the age of 65, and those with certain underlying health conditions, fall into the category of particularly vulnerable individuals at increased risk of serious complications if exposed to COVID-19. The Court has no doubt, based on the letters submitted by the two proposed third-party custodians and their testimony at the May 15, 2020 hearing before Judge Boardman, that they wish to supervise Gallagher in their home. However, this Court is charged with considering the relative COVID-19 related risk that would be posed by the proposed temporary release. Releasing a detainee who has been residing in an institution with some, albeit relatively limited, COVID-19 infections into a home with multiple medically-susceptible individuals, including one who is particularly vulnerable as a result of a stroke, presents a high degree of danger to the community. Further, it is unclear that the medical care Gallagher might receive in that residence, if he were to become COVID-positive, would be superior to that he would receive at CDF, with its on-site medical staff.

Thus, the four factors enumerated in *Clark* all weigh in favor of Gallagher's continued detention. General information about the overarching risk of substantial COVID-19 outbreaks in detention facilities (not, to date, including CDF), does not, alone, create a "compelling reason" for Gallagher's temporary release, in light of all of the competing considerations relating to his danger to the community and his serious risk of flight. As Judge Xinis recently stated:

> Finally, this decision in no way minimizes the unprecedented threat that COVID-19 has befallen on our community, country, and world, including places of confinement. For some individuals, the virus visits profound suffering, illness, and even death. This cold reality, however, does not permit the Court to cast the Bail Reform Act aside, but rather to follow it with special care to the individualized circumstances presented. When doing so here, the balance simply does not tilt in favor of [the defendant's] release.

*United States v. Remarque,* PX-19-039, 2020 WL 1983927, at *4 (D. Md. Apr. 27, 2020).

IV.  CONCLUSION

For the reasons stated herein, the government's Motion for Review of Detention Order, ECF 20, is GRANTED, and an order of pretrial detention will be issued.

Date: May 22, 2020

/s/
Stephanie A. Gallagher
United States District Judge