IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DEVIN GALLAGHER,<br>*Defendant*. | CRIMINAL No. ELH-19-0479 |

**MEMORANDUM**

In an Indictment filed on December 9, 2019 (ECF 1), defendant Devin Gallagher was charged with possession with intent to distribute controlled substances, in violation of 21 U.S.C. § 841(a)(1) (Count One); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c) (Count Two); and possession of a firearm and ammunition by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (Count Three). *Id.*

Pursuant to a Plea Agreement (ECF 46), on November 17, 2020, defendant entered a plea of guilty to Count One. ECF 44. At sentencing on May 7, 2021 (ECF 59), the Court sentenced defendant to 85 months of incarceration, with credit for time served from May 22, 2019 to July 9, 2019, and October 31, 2019 to May 7, 2021. ECF 60 (Judgment); ECF 61 (Statement of Reasons).

Defendant, who is now self-represented, filed a motion to reduce his sentence under 18 U.S.C. § 3582(c)(2). ECF 99 (the "Motion"). The Motion is based on Amendment 821 to the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"). In the Motion, defendant contends that, with changes to the law, he believes that if he were sentenced today, he would receive a lesser sentence. *Id.* at 1.

The government opposes the Motion. ECF 105 ("Opposition"). According to the government, defendant is ineligible for relief pursuant to Amendment 821 "because his status as a Career Offender and [his] criminal history category are not affected by Amendment 821. . . ." *Id.*

1

at 1; *see* Presentence Report ("PSR", ECF 51), ¶¶ 25, 50. As a Career Offender, defendant has a criminal history category of VI. *See* ECF 51, ¶ 49.

In the Motion, defendant has requested the appointment of counsel. *See* ECF 99. The Office of the Federal Public Defender has provided notice to the Court that it does not intend to supplement the Motion. ECF 101. Defendant has not replied.

I see no grounds for appointment of counsel. The issue is not complicated and defendant has ably asserted his argument. Moreover, no hearing is necessary to resolve the Motion. *See* Local Rule 105.6.

For the reasons that follow, I shall deny the Motion.

## I.     Factual and Procedural History[1]

Attachment A to the Plea Agreement (ECF 46) contains a detailed stipulation of facts. *Id.* at 10-11. The stipulation established that in April 2019 a confidential informant told the Anne Arundel County Police Department that defendant was selling large quantities of marijuana in the Cape St. Clair area of Annapolis. On April 25, 2019, detectives observed defendant as he exited a black Chevrolet Impala at an apartment complex located at 570 Bellerive Road. Then, he entered the vehicle with a backpack and drove to a back parking lot of the apartment complex. A K-9 scan of defendant's vehicle on April 30, 2019, resulted in a positive alert for controlled dangerous substances. *Id.* at 10.

Investigators continued surveillance of defendant's movements in May 2019. A court-authorized GPS tracking unit was installed on defendant's vehicle. Law enforcement also established surveillance of a white van with West Virginia dealer tags parked at a residence on

---

[1] I incorporate here the factual and procedural summary set forth in my Memorandum Opinion of December 21, 2022. *See* ECF 92.

Bellerive Road. Investigators had previously stopped defendant in two different vehicles that had displayed the same tag. *Id.*

Defendant was observed on May 3, 2019, entered the parking lot at the Bellerive Road location, where he parked behind a white van. Detectives watched defendant exit his vehicle, approach the van, and unlock the van's rear doors. Defendant removed two boxes and a backpack and put them in his Impala. *Id.*

A K-9 scan of the white van was conducted on May 7, 2019, and the dog alerted for the presence of a controlled dangerous substance inside the van. *Id.* On that same day, defendant was followed to a bank where he made a cash deposit. He then drove to an Xfinity store, where he attempted to mail a package that contained an Xfinity box as well as black cable, Xfinity paperwork, and $7,500 in U.S. currency in a heat-sealed plastic bag wrapped in aluminum foil and saw dust. *Id.* Defendant then went to another bank to deposit money and returned to the Bellerive Road address.

That afternoon, detectives saw defendant at 570 Bellerive Road, where he parked behind the white van, unlocked the rear door of the van, removed a brown bag, and handed it to a passenger in defendant's Impala. *Id.* Defendant was then seen at that same location, unloading a large box from the Impala, which he took to his apartment. *Id.*

On May 9, 2019, a K-9 scan was conducted at the front door area of defendant's apartment on Bellerive Road. *Id.* at 11. It resulted in a positive alert for controlled dangerous substance. The K-9 also had a positive alert at defendant's vehicle. *Id.*

Detectives executed search warrants for defendant's residence at Bellerive Road (apartment no. 143) and his two vehicles on May 9, 2019. *Id.* During the search of the white van, detectives seized "approximately two kilograms of marijuana; approximately 6,000 grams (net of THC cartridges); an unloaded .40 caliber Smith & Wesson handgun; a .40 caliber magazine

3

containing eight rounds; and documents in [defendant's] name, among other things." *Id.* A search of defendant's Impala "yielded $4,300 in U.S. currency; 172 grams (net) of THC cartridges; and documents in [defendant's] name." *Id.* A search of defendant's residence "resulted in the seizure of approximately $38,960.00 in U.S. currency; a small amount of marijuana; drug packaging paraphernalia; and paperwork in [defendant's] name." *Id.* In addition, defendant had "approximately $1,910.00 in U.S. currency in his pants pocket at the time of his arrest." *Id.*

The PSR (ECF 51) reflected that defendant had a criminal history score of 23 points. *Id.* ¶ 47. Two status points were then added because defendant was under a criminal justice sentence for the drug offense referenced in ¶ 45 of the PSR. *See id.* ¶ 48. This raised defendant's score to 25 points. *Id.* ¶ 49. Regardless of whether defendant had 23 points or 25 points, both equate to a criminal history category of VI.

Moreover, in the Plea Agreement (ECF 46), the parties agreed that defendant qualified as a career offender. *Id.* ¶ 6(c)(e). And, the PSR reflects that defendant, indeed, qualified as a career offender. ECF 51, ¶ 50; *see* U.S.S.G. § 4B1.1(b). This determination was based on the convictions referenced in ECF 51, ¶¶ 37, 44, 45. As a career offender, defendant has a criminal history category of VI. *See* U.S.S.G. § 4B1.1(b). In addition, because defendant qualified as a career offender, this increased defendant's offense level to 24, before any deductions for acceptance of responsibility. *See* ECF 46, ¶ 6; ECF 51, ¶ 25.

Defendant was 28 years of age at sentencing. ECF 51 at 1. The Guidelines called for a sentence ranging from 77 to 96 months of incarceration. *Id.* ¶ 98. The government sought a sentence of 96 months of incarceration. ECF 79 (Tr., 5/7/21), at 11, 16, 17. As noted, the Court sentenced defendant to 85 months of incarceration. ECF 60, ECF 61.

In November 2021, Gallagher moved for compassionate release. ECF 65. He supplemented the motion in February 2022. ECF 71. Through counsel, he filed two additional

4

supplements.  ECF 90, ECF 91.  In a 31-page Memorandum Opinion (ECF 92) and Order (ECF 93) of December 21, 2022, I denied the motion.

Gallagher noted an appeal.  ECF 94.  The Fourth Circuit affirmed in a per curiam decision issued on June 20, 2023.  ECF 97.  The Mandate issued on July 12, 2023.  ECF 98.  This Motion followed a few months later, on November 17, 2023.  ECF 99.

Defendant is presently incarcerated at Terre Haute USP (search by BOP Register Number 65051-037), https://www.bop.gov  He has a projected release date of February 9, 2026.  *Id.*

Additional facts are included in the Discussion.

## II.  The Legal Standard

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see United States v. Moody*, 115 F.4th 304, 310 (4th Cir. 2024); *United States v. Davis*, 99 F.4th 647, 653 (4th Cir. 2024); *United States v. Brown*, 78 F.4th 122, 128 (4th Cir. 2023); *United States v. Malone*, 57 F.4th 167, 173 (4th Cir. 2023); *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023); *United States v. Bethea*, 54 F.4th 826, 831 (4th Cir. 2022); *United States v. Ferguson*, 55 F.4th 262, 267 (4th Cir. 2022); *United States v. Hargrove*, 30 F.4th 189, 194 (4th Cir. 2022); *United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020), *abrogated on other grounds by United States v. Troy*, 64 F.4th 177 (4th Cir. 2023); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But, "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is "expressly permitted by statute."  *See* 18 U.S.C. § 3582(c)(1)(B); *see also Jackson*, 952 F.3d at 495.

Section 3582(c)(2) of 18 U.S.C. is relevant.  It permits a court to reduce the sentence of a defendant who was "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission," if the amendment has been made

5

retroactively applicable. *Id.*; *see United States v. Riley*, ELH-13-0608, 2022 WL 9361679, at *5 (D. Md. Oct. 14, 2022) (citing *Dillon v. United States*, 560 U.S. 817, 826 (2010)). One such retroactive amendment is Amendment 821 to the Guidelines, which went into effect on November 1, 2023. *Amendment 821*, U.S. SENT'G COMM'N, https://www.ussc.gov/guidelines/amendment/821.

Amendment 821 "is a multi-part amendment." *United States v. Gary*, JKB-08-086, 2024 WL 1641007, at *1 (D. Md. Apr. 16, 2024). Part A, which is pertinent here, pertains to criminal history and so called "status points." *Id.* Prior to the amendment, two points were added to a defendant's criminal history score if the defendant committed the underlying offense while on parole, probation, or supervised release (previously codified at U.S.S.G. § 4A1.1(d)). But, Amendment 821 limits the assignment of such "status points." *See* U.S.S.G. § 4A1.1(e).

Notably, the amendment eliminated any status points for a defendant who "has six or fewer criminal history points." *Id.*; *see also United States v. Law*, DKC-11-489, 2024 WL 3757902, at *1 (D. Md. Aug. 12, 2024) ("Part A . . . eliminated status points altogether for a defendant with six or fewer criminal history points."). And, a defendant who has seven or more criminal history points is only subject to a one-point increase, rather than a two-point increase. *See* U.S.S.G. § 4A1.1(e).

Part B provides for a decrease of two offense levels if ten conditions are met. *See* U.S.S.G. § 4C1.1(a):

> **(1)** the defendant did not receive any criminal history points from Chapter Four, Part A;
> **(2)** the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
> **(3)** the defendant did not use violence or credible threats of violence in connection with the offense;
> **(4)** the offense did not result in death or serious bodily injury;
> **(5)** the instant offense of conviction is not a sex offense;
> **(6)** the defendant did not personally cause substantial financial hardship;

6

**(7)** the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
**(8)** the instant offense of conviction is not covered by § 2H1.1 (Offenses Involving Individual Rights);
**(9)** the defendant did not receive an adjustment under § 3A1.1 (Hate Crime Motivation or Vulnerable Victim) or § 3A1.5 (Serious Human Rights Offense); and
**(10)** the defendant did not receive an adjustment under § 3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. 848[.]

### III.     Discussion

Defendant argues that "the courts enhanced [his] points, and sentenc-ing [sic] from [his] Criminal History which put [him] in a higher category for longer imprisonment." ECF 99 at 1. Defendant is correct that two points were initially added to his criminal history score, under what was then U.S.S.G. § 4A1.1(d). *See* ECF 51, ¶ 48. The two points were added at the time of the underlying offense, because defendant was on probation for the State offenses referenced in ECF 51, ¶¶ 45, 48. Thus, because of the status points, defendant's initial criminal history score was increased from 23 to 25 points. *Id.* ¶ 47, 48.[2] Twenty-five points results in a criminal history category of VI. *Id.* ¶ 49. However, under the current provision, defendant would be assigned only one status point, yielding a criminal history score of 24. But, whether a defendant has 23 points, 24 points, or 25 points, these points result in a criminal history category of VI.

Moreover, as the Plea Agreement (ECF 47) and the PSR (ECF 51) indicate, defendant also qualified as a career offender under U.S.S.G. § 4B1.1(b). A person qualifies as a career offender when, as here, the instant offense of conviction is a "controlled substance offense" or a "crime of violence," as defined in U.S.S.G. § 4B1.2(a) and (b), the defendant committed the instant offense when he was at least 18 years of age; and the defendant has two prior and distinct felony

---

[2] Several of defendant's prior offenses did not score points. *See* ECF 30, ¶¶ 30-34.

convictions for either a crime of violence or a controlled substance offense. U.S.S.G. § 4B1.1(a); *see also* § 4B1.2(c). Defendant met the criteria with the offenses set forth in ECF 51, ¶¶ 37, 44, 45.

Because defendant is a career offender, he is automatically assigned a criminal history category of VI. Thus, his actual criminal history points are of no moment. Defendant's offense level and his criminal history category are determined by his career offender status. *See* U.S.S.G. § 4B1.1(b); *United States v. Smith*, 19-312-MOC-DCK, 2024 WL 253659, at *2 (W.D.N.C. Jan. 23, 2024); *see also United States v. Gilliam*, JKB-20-0269, 2024 WL 3965589, at *1 (Aug. 28, 2024); *United States v. Williams*, 20-91-01, 2024 WL 947841, at *2 (S.D.W.Va. Mar. 5, 2024).

Put simply, the status points are irrelevant in this case, given defendant's career offender status. It follows that he is ineligible for a sentence reduction on the basis of Amendment 821, Part A. Nor does defendant satisfy Part B of Amendment 821. *See* U.S.S.G. § 4C1.1(a).

Moreover, 18 U.S.C. § 3582(c)(2) permits a court to modify a term of imprisonment if the defendant was sentenced "based on a sentencing range that has *subsequently* been lowered by the Sentencing Commission . . . ." (Emphasis added). But, defendant was not sentenced based on a sentencing range that was "subsequently" lowered.

### III. Conclusion

For the foregoing reasons, I shall deny defendant's Motion (ECF 99). An Order follows, consistent with this Memorandum.

Date: February 18, 2025

                                               /s/
                                      Ellen Lipton Hollander
                                      United States District Judge